IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MERLETA MOHR,

           Plaintiff,

    vs.                          Case No. 05-1354-JTM

MARGOLIS, AINSWORTH & KINLAW
CONSULTING, INC.,

           Defendant.

## MEMORANDUM AND ORDER

       This matter comes before the court on the defendant's Motion to Dismiss Pursuant to

Fed.R.Civ.P. 12(b)(6) (Dkt. No. 11) and Motion to Dismiss or, in the alternative, To Transfer

Venue (Dkt. No. 13).  Defendant advances several grounds on which dismissal or transfer may be

appropriate.  The issues before the court are:  1) whether plaintiff states a claim for  malicious

prosecution and the tort of outrage; 2) whether plaintiff satisfies the requirements of venue; 3)

whether the first-to-file rule requires this court to defer to a pending state action in South

Carolina; and 4) whether transfer of venue is appropriate.  After reviewing the parties'

arguments, the court denies defendant's motions.

## I. BACKGROUND

       Plaintiff Merleta Mohr is a Kansas resident.

       Defendant Margolis, Ainsworth & Kinlaw Consulting, Inc., (hereafter "MAK") is a

consulting business located in South Carolina that specializes in providing computer software

products and services primarily to the utility industry, specifically billing software.  MAK has done business with the City of Wichita, Kansas Gas in Topeka or other Kansas utilities entities directly or through subcontractor Indus, another nationwide company.  Plaintiff believes that MAK continues to solicit business from Kansas-based utilities or utilities that serve in Kansas.  Plaintiff also believes that MAK continues to do business with the City of Wichita through Indus.  Defendant denies that it had customers or business in Kansas at the time plaintiff commenced this lawsuit.

Ms. Mohr became a MAK employee on or about June 3, 2002.  Ms. Mohr was initially hired as a Business Development Manager and functioned as a salesperson for MAK until the last quarter of 2004.  Ms. Mohr claims she was hired as an executive, though MAK claims that this was in name only.  Plaintiff worked from her home in Wichita and was MAK's sole employee in Kansas.  She was tasked with selling MAK's services on a nationwide basis.

Throughout her employment with defendant, plaintiff was a Kansas resident.  Her offer letter designated her place of employment as her home in Wichita, Kansas.  During plaintiff's employment, because she was a Kansas resident, defendant paid state income and unemployment taxes for her in Kansas.  After her employment was terminated, Ms. Mohr could have collected unemployment benefits in Kansas.  Plaintiff claims she has never signed an employment contract.

On or about April 20, 2005, MAK terminated Ms. Mohr's employment.  The reason for the termination is partially in dispute.  On the same date, MAK terminated three other employees.  MAK offered plaintiff a severance package via e-mail, which plaintiff read in her home state of Kansas.  Plaintiff informed MAK's president Scott Ainsworth the next day, on April 21, that she

had suffered a death in the family and needed to tend to family matters before considering the

severance package he had offered.  She asked for time to tend to her family before responding to

the severance offer.  Defendant's president did not object.

      In an e-mail on April 26, 2005, defendant's president stated that they noted e-mails had

been deleted from the MAK server when the e-mails had been downloaded. Ainsworth asked that

plaintiff keep copies of any MAK materials and not destroy them as stipulated in plaintiff's

employment agreement.  Ainsworth noted: "We consider all documents, files, etc to be

confidential MAK material. I would ask that if you have copies of any and all MAK material,

that you do not destroy them..."

      After reading the e-mail on April 27, plaintiff called defendant's president and e-mailed

him to assure him that she had been out of town for a funeral and had not been using her laptop

nor had she destroyed or used "any other material from the MAK server or the MAK laptop in

[her] possession." Ainsworth did not object.  In an e-mail dated April 28, 2005, plaintiff stated

that she would respond to the severance package by the following Monday or Tuesday.  The

parties have not included any e-mails indicating plaintiff provided such a response.

      On May 13, 2005, defendant's president sent an e-mail to plaintiff noting that he had not

heard from plaintiff in a while.  A week later, in an e-mail on May 20, 2005, Ainsworth stated

that he had not heard from plaintiff and wanted to finalize the severance package and return of

the laptop computer.  Within four days, on May 24, 2005, plaintiff's counsel sent defendant a

demand letter, stating that plaintiff would return the laptop and all MAK materials if defendant

would advance the postage. The letter also formally complained of gender discrimination and

retaliation in plaintiff's pay and termination.  MAK representatives acknowledged by fax that the

firm had received the letter offering to return the laptop computer, and they were "reviewing it." After acknowledging receipt of plaintiff's offer to return the computer, MAK did not advance postage for the laptop.

Instead, on June 1, 2005, defendant filed against plaintiff a five-count state court action in South Carolina. MAK sought declaratory judgment and injunctive relief.  MAK alleged violation of the South Carolina Trade Secrets Act, breach of duty of loyalty, and conversion. MAK claimed that it had "demanded that the laptop be returned and Plaintiff had refused;" that plaintiff had acted "wilfully and wantonly and in violation of Defendant's rights" in retaining the laptop; that plaintiff had intentionally misappropriated trade secrets; that she "had intentionally and wilfully misappropriated and withheld propriety and confidential information;" and that she was "wrongfully and willfully detaining MAK's property" and was exercising "ownership, possession and control. "

Defendant's counsel mailed a copy of the lawsuit to plaintiff's counsel in Kansas but did not serve the lawsuit on plaintiff.  When plaintiff's counsel received a copy of the lawsuit, she asked defendant's counsel why MAK filed suit. Plaintiff's counsel alleges that defendant's counsel admitted the suit was filed solely to secure jurisdiction in South Carolina.

Plaintiff's counsel sent an e-mail on June 8 complaining about the false allegations in the South Carolina lawsuit, stating that he would not accept service and that plaintiff had already offered to return the laptop.  After the June 8 e-mail from plaintiff's counsel, the original South Carolina lawsuit was never served. Plaintiff's counsel claims there were no ongoing settlement discussions after June 15, 2005, so this could not be the reason that the lawsuit was not served.

Approximately two weeks after MAK filed the South Carolina action, plaintiff returned

the laptop and several other items to MAK.  However, MAK claims that plaintiff still has not returned all of  its property, such as a printer.

On or about November 28, 2005, Ms. Mohr filed in this court a four-count complaint alleging a federal statutory claim and a state statutory claim relating to her employment with MAK.  She also asserted two common law claims relating to MAK's assertion of its legal rights in the South Carolina action. She later amended her complaint to assert a violation of Title VII against defendant MAK only.

On or about December 27, 2005, the Kansas Secretary of State served MAK via mail. On or about January 9, 2006, MAK amended the South Carolina action to withdraw the claims related to MAK's computer that was in plaintiff's possession, despite the fact that defendant claims it has not received "all" of its property.  Defendant amended its original South Carolina state court lawsuit to delete all counts except a one-count declaratory judgment action.  On or about January 10, 2006, MAK personally served the amended summons and complaint on Ms. Mohr, and that action remains pending.

## II. PARTIAL MOTION TO DISMISS

### A. Standard

"A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling [him] to relief under [his] theory of recovery." Poole v. County of Otero, 271 F.3d 955, 957 (10th Cir. 2001) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The court must accept all the well-pled allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Boyd v. Runyon, No. 94-1557-JTM, 1996 WL 294330, at *1 (D. Kan. May 23,

1996) (citing <u>Williams v. Meese</u>, 926 F.2d 994 (10th Cir. 1991)).  "The [c]ourt, however, need

not accept as true those allegations that are conclusory in nature, i.e., which state legal

conclusions rather than factual assertions."  <u>Fugate v. Unified Gov't of Wyandotte</u>, 161 F. Supp.

2d 1261, 1263 (D. Kan. 2001) (citing <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## B. Analysis

## 1. Malicious Prosecution

Defendant asks this court to dismiss plaintiff's malicious prosecution claim because

plaintiff cannot show probable cause, actual malice or that the proceedings terminated in

plaintiff's favor.

Under Kansas law, a claim of malicious prosecution requires the following elements:  1)

defendant initiated, continued or procured civil or criminal proceedings against the plaintiff; 2) in

so doing, the defendant acted without probable cause; 3) defendant acted with malice; 4) the

proceeding terminated in favor of the plaintiff; and 5) plaintiff sustained damages as such.

<u>Fillmore v. Ordonez</u>, 829 F. Supp. 1544, 1561 (D. Kan. 1993) <u>aff'd by</u> 17 F.3d 1436 (10th Cir.

Mar 1, 1994) (citations omitted).  South Carolina uses a very similar standard. <u>See</u> <u>Jordan v. L.</u>

<u>Frank Dees and Chemphar, Inc.</u>, 452 S.E.2d 838, 839 (S.C. 1995).  An essential element for

bringing a claim of malicious prosecution is that plaintiff must have received a favorable

decision in the proceeding.  <u>Nelson v. Miller</u>, 227 Kan. 271, 607 P.2d 438, 443 (Kan. 1980).  At

present, the parties dispute whether plaintiff can demonstrate probable cause or actual malice.

Based on plaintiff's e-mails and affidavits indicating there was an offer to return the laptop,

plaintiff has stated a prima facie case that defendant acted without probable cause and malice.

Defendant, however, does raise an important point as to the fourth element of a malicious

6

prosecution claim: whether that case has terminated in plaintiff's favor.  The facts in defendant's amended complaint state that Ms. Mohr still retains some of MAK's property, but the declaratory judgment only asks that the court declare defendant has met its contractual and legal obligations. While MAK alleges some of its property is still in Ms. Mohr's possession, the amended complaint contains no cause of action related to the laptop computer.  In the action before this court, plaintiff narrowly limited her malicious prosecution claim to the claim for the laptop computer.  Since proceedings relating to the laptop computer have been removed from defendant's amended complaint in South Carolina and thus cannot be appealed or further reviewed, plaintiff states a prima facie case that the proceedings terminated in her favor.  Under these circumstances, plaintiff may proceed with her claim.  See Nelson v. Miller, 233 Kan. 122, 660 P.2d 1361 (Kan. 1983) (reversing the trial court's summary judgment dismissal of the malicious prosecution claim and finding that whether dismissal was in fact a termination favorable to defendant depended upon circumstances under which proceedings were withdrawn).

**2. Tort of Outrage**

Next, defendant argues that plaintiff fails to state a claim for the tort of outrage because plaintiff cannot show that the assertion of defendant's legal rights constitutes outrageous conduct.

The tort of outrage requires the trial court to determine two threshold issues: 1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and 2) whether the emotional distress suffered by the plaintiff was of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it.  Smith v. Welch, 265 Kan. 868, 876, 967 P.2d 727, 733 (Kan. 1998) citing Taiwo v. Vu, 249 Kan. 585, Syl. ¶ 4, 822 P.2d 1024.

7

To establish a claim for the tort of outrage, plaintiff must allege: 1) conduct by the defendant in intentional or reckless disregard of the plaintiff; 2) extreme and outrageous conduct; 3) a causal connection between the defendant's conduct and plaintiff's mental distress; and 4) plaintiff's mental distress was extreme and severe.  Echols v. Unified Government of Wyandotte County, Kansas City, Kan., 399 F. Supp.2d 1201, 1210 (D. Kan. 2005) citing Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman, 267 Kan. 245, 257, 978 P.2d 922 (1999).  See also Ford v. Hutson, 276 S.E. 776, 778 (S.C. 1981) (listing the elements under South Carolina law).  In Kansas, intentional infliction of emotional distress is the same as the tort of outrage.  Hallam v. Mercy Health Center, 278 Kan. 339, 97 P.3d 492 (2004).

Here, the court finds that plaintiff should be allowed to proceed under her theory of recovery.  Besides plaintiff's citation to the Restatement (Second) of Torts and unpublished Kansas Court of Appeals case, defendant has not shown that there is no way that plaintiff cannot establish the elements of her claim.  It is premature to dismiss plaintiff's claim.  Plaintiff's affidavits indicate that she attempted to return MAK's property but was instead faced with a lawsuit.  There is a basis to conclude that defendant's conduct may be extreme and outrageous and that plaintiff suffered some emotional distress.  Because plaintiff provided evidence that she had already tried to return MAK's equipment and that plaintiff suffered some emotional distress because of MAK's decision to file suit, the court finds that plaintiff states a prima facie case for the tort of outrage.  Recognizing the high threshold Kansas law places on a plaintiff on a claim of outrage, this claim may not survive a summary judgment motion, but plaintiff is entitled to develop the record at this point.

**III. VENUE & PERSONAL JURISDICTION**

**A. Improper Venue**

The standards for deciding a motion to dismiss for improper venue are generally the same as for deciding a motion to dismiss for lack of personal jurisdiction. Financial Sys. & Equip., Inc. v. Easy Sys., Inc., 2000 WL 714331, at *1 (D. Kan. May 17, 2000); Billings, M.D. v. Clinitec Intern., Inc., 2000 WL 1072167, at *1 (D. Kan. July 25, 2000). Upon a defendant's challenge to venue, the plaintiff has the burden of establishing that venue is proper in the forum state. M.K.C. Equip. Co. v. M.A.I.L. Code, Inc., 843 F. Supp. 679, 682 (D. Kan. 1994). As in a motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing venue over the defendant, and plaintiff must make a prima facie showing on the basis of affidavits and other written material to withstand the motion. Behagen v. Amateur Basketball Ass'n,. 744 F.2d 731, 733 (10th Cir.1984), cert. denied, 471 U.S. 1010 (1985) (citations omitted). The allegations in the complaint must be taken as true to the extent that they are uncontroverted. Id. Conflicting affidavits are resolved in favor of the plaintiff as long they are sufficient to withstand contrary showing by the moving party. Id.

The applicable statute provides as follows:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Subsections (b) (1) and (b)(3) do not apply here because defendant is not a Kansas resident. Thus, venue is proper in this district only if a substantial part of the events giving rise to plaintiff's claim occurred in Kansas. 28 U.S.C. § 1391(b). See Etienne v.

9

Wolverine Tube, Inc., 12 F. Supp.2d 1173, 1180 (D. Kan. 1998).  Venue may also be proper in

the judicial district where a substantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391(b).  The statute goes on to note that a corporation shall be deemed to reside in

any judicial district in which it is subject to personal jurisdiction at the time the action is

commenced.  28 U.S.C. § 1391(c).

**B. Personal Jurisdiction**

 Since a review of venue includes discussion of personal jurisdiction, the court will also

review this standard.  A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction requires

that plaintiff bears the burden of establishing personal jurisdiction over the defendant.  Etienne,

12 F. Supp.2d at 1177 (citing Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456

(10th Cir. 1996)).  Prior to trial, however, when the court decides a motion to dismiss for lack of

jurisdiction on the basis of affidavits and other written materials, the plaintiff need only make a

prima facie showing.  Id. (citing Kuenzle, 102 F.3d at 456).  The court must take the allegations

in the complaint as true to the extent that they are uncontroverted by the defendant's affidavits. If

the parties present conflicting affidavits, the court resolves all factual disputes in the plaintiff's

favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary

presentation by the moving party. Behagen v. Amateur Basketball Ass'n of the United States,

744 F.2d 731, 733 (10th Cir. 1984), cert. denied, 471 U.S. 1010 (1985) (citations omitted); Key

Indus., Inc. v. O'Doski, Sellers & Clark, Inc., 872 F. Supp. 858, 860-61 (D. Kan. 1994).

 A defendant can establish contacts with the forum state sufficient to support jurisdiction

in one of two ways.  Specific jurisdiction exists when a defendant purposely avails himself of the

privilege of conducting activities within the forum state, thus invoking the benefits and

protections of its laws, and the claims against him arise out of those contacts. <u>Kuenzle</u>, 102 F.3d at 455.  General jurisdiction lies even when the claims are unrelated to the defendant's contacts with the forum state. <u>Trierweiler v. Croxton and Trench Holding Corp.</u>, 90 F.3d 1523, 1533 (10th Cir. 1996).  However, general contacts are sufficient only if they are systematic, substantial, and continuous. <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984).

In analyzing a motion to dismiss for lack of personal jurisdiction, the court must conduct a two-part inquiry.  First, it must determine if the defendant's conduct falls within one of the provisions of the forum state's long-arm statute, which in this case is Kan. Stat. Ann. § 60-308(b).  Second, the court must determine whether the defendant had sufficient "minimum contacts" with the forum state to satisfy the constitutional due process requirements. <u>Equifax Servs., Inc. v. Hitz</u>, 905 F.2d 1355, 1357 (10th Cir. 1990); <u>Electronic Realty Assocs.</u>, <u>L.P. v. Paramount Pictures Corp.</u>, 935 F. Supp. 1172, 1175 (D. Kan. 1996).  The Kansas long-arm statute is to be liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution. <u>In re Hesston Corp.</u>, 254 Kan. 941, 951, 870 P.2d 17 (1994).  "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, [the court] proceed[s] directly to the constitutional issue." <u>Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.</u>, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing <u>Volt Delta Res., Inc. v. Devine</u>, 241 Kan. 775, 740 P.2d 1089, 1092 (Kan. 1987)).

The Tenth Circuit has endorsed a three-part test to determine whether a nonresident defendant's contacts with the forum state are strong enough to justify an exercise of personal

jurisdiction.  See Rambo v. American S. Ins. Co., 839 F.2d 1415, 1419 n. 6 (10th Cir. 1988).

First, the defendant must have sufficient contact with the forum state so that the exercise of

jurisdiction will not offend traditional notions of fair play and substantial justice. Second, the

defendant must have purposefully availed itself of the privileges of conducting activities in the

forum state.  Finally, the quality and nature of the defendant's contacts must be such that it is

reasonable, in the context of our federal system of government, to require the defendant to appear

in the forum state. Id.; Marcus Food Co. v. Family Foods of Tallahassee, Inc., 729 F. Supp. 753,

757-58 (D. Kan. 1990).

## C. Analysis

    The court now turns to the issue of whether venue is proper for plaintiff's claims of

malicious prosecution and the tort of outrage.  Defendant argues that plaintiff cannot satisfy the

general jurisdiction requirements for both claims because MAK does not have ongoing,

continuous and systematic contact with this state.  Alternatively, defendant argues that venue is

not proper because a substantial part of the events or omissions giving rise to the claim did not

occur in this district.  Plaintiff responds that venue is proper because defendant resides here

based on personal jurisdiction, or alternatively, because a substantial part of the events giving rise

to the claim occurred in Kansas.

    Normally, satisfying the requirements of personal jurisdiction is enough to satisfy the

requirements of venue.  See B-S Steel of Kansas, Inc. v. Texas Industries, Inc., 229 F. Supp.2d

1209, 1223 (D. Kan. 2002).  However, Section 1391 requires defendant be subject to personal

jurisdiction in Kansas at the time this action was commenced.  Plaintiff submits an affidavit

stating she believes that MAK is a subcontractor for Indus and has likely done work through Indus for Kansas Gas in Topeka and other Kansas utilities. Plaintiff claims she could not confirm this without further discovery. She also believes that MAK continues to solicit business from Kansas based utilities or utilities that serve in Kansas. In response, defendant MAK asserts that it had no customers, clients, employees, offices or work in Kansas. Defendant, however, does not submit an affidavit or other supporting documents in support of this assertion. Defendant also does not respond to plaintiff's assertion that it may be working as a subcontractor for Indus.

While defendant admits that it is subject to personal jurisdiction for the employment claims based on the Kansas long-arm statute, it is not clear whether malicious prosecution and the tort of outrage satisfies the requirements of jurisdiction. Plaintiff argues that Kan. Stat. Ann. §60-308(b)(5), entering in an express or implied contract, and Kan. Stat. Ann. § 60-308(b)1), transacting any business provide a basis for exercising jurisdiction on the two claims. However, defendant disputes whether plaintiff's claims arise out of these specific contacts and argues that the court should apply the general jurisdiction standard. Since plaintiff has not had an opportunity to conduct discovery and defendant has not provided supporting documentation, it is unclear what contacts defendant had with this jurisdiction at the time this action was commenced. Thus, personal jurisdiction, whether specific or general, does not provide the court an adequate basis for determining venue.

Therefore, the court proceeds to the parties' second argument: whether a substantial part of the events giving rise to the claims of the tort of outrage occurred in Kansas. Title 28 U.S.C. §1391(b)(2) is interpreted to allow that a substantial part of the events may have occurred in

13

more than one district, and "venue may be proper even if contacts with another district were more substantial." B-S Steel, 229 F. Supp.2d at 1223; Wempe v. Sunrise Medical HHG, Inc., 61 F. Supp.2d 1165, 1173 (D.Kan.1999) (quotations omitted).   In applying this standard, "[t]he court must decide whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim." Andrean v. Secretary of the United States Army, 840 F. Supp. 1414, 1422 (D. Kan. 1993).   "The forum activities must have been events significant to the plaintiff's claims." Hudye Soil Serv., Inc. v. Tyler, 46 F. Supp. 2d 1157, 1163 (D. Kan. 1999). In Wempe, the court found that venue was proper in Kansas "even though the defendant's activities in Texas may have been more substantial." 61 F. Supp. at 1173.   In this case, the underlying action relates to defendant filing a suit for plaintiff's alleged withholding of MAK's computer in Kansas.  Plaintiff submitted supporting documents indicating that she offered to return the computer if MAK paid postage.  Despite this offer, MAK filed a suit in South Carolina state court alleging plaintiff withheld its equipment.  Interestingly, MAK never served the summons and complaint with these allegations, though it provided a courtesy copy to plaintiff's attorney.  MAK provides no reasonable explanation for the delay.

Outside of the actual filing of the suit in South Carolina, defendant's actions related to this forum. Venue is proper in Kansas because activities in the forum state played a substantial role in the circumstances leading to the plaintiff's claim.  The South Carolina action related to plaintiff's alleged withholding of equipment in Kansas.  MAK sent a courtesy copy of the lawsuit to plaintiff's counsel in Kansas.  The property subject to suit was located at all times in Kansas. All demands in the form of e-mails and letters were transacted with the state of Kansas. Although jurisdiction may also lie in South Carolina, events occurred in Kansas, including but

14

not limited to the contact between counsel, the receipt of the courtesy copy of the complaint, and the effect defendant's lawsuit had on plaintiff. Under these circumstances, venue is proper in Kansas.

**IV. FIRST-TO-FILE RULE**

Finally, defendant argues that this court should defer to the first filed action in South Carolina. Alternatively, defendant asks this court to apply the <u>Colorado River</u> doctrine to this case. Plaintiff responds that this court should not defer to a subordinate state court where the only claim is a declaratory judgment action, which creates the impression that defendant is forum shopping. The court is in agreement with plaintiff.

The Tenth Circuit outlined how to approach cases where there may be duplicate proceedings:

> Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." <u>Sutter Corp. v. P & P Indus., Inc.</u>, 125 F.3d 914, 917 (5th Cir. 1997) (quotation omitted). To aid in achieving this goal, the "first-to-file" rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court. <u>Alltrade, Inc. v. Uniweld Prods., Inc.</u>, 946 F.2d 622, 625 (9th Cir. 1991). However, "simply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the <u>merits</u> of the case." <u>Hospah Coal Co. v. Chaco Energy Co.</u>, 673 F.2d 1161, 1164 (10th Cir. 1982).

<u>Buzas Baseball, Inc. v. Board of Regents of University System of Georgia</u>, 1999 WL 682883, *2-3 (10th Cir. Sep. 2, 1999). This Circuit has recognized that "a trial court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." <u>Id.</u> at *3.

See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987) (where declaratory judgment action is filed in anticipation of trademark infringement action, "infringement action should proceed, even if filed" after the declaratory judgment action); Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967).

Here, defendant filed an action in South Carolina state court shortly after receiving a demand letter from plaintiff's counsel. At that time, defendant sought declaratory judgment as well as several counts related to plaintiff's alleged retention of MAK property, in particular a laptop computer. Plaintiff's counsel refused service on the action because his client had already offered to return the computer. Defendant did not attempt to serve the action again. In November, plaintiff filed the instant action, which the Kansas Secretary of State served on MAK on December 28, 2005. Defendant then amended its complaint, removing the counts relating to the laptop computer, and serving plaintiff in January 2006.

Because defendant filed his action in state court rather than a federal court, this court does not follow the first-to-file rule. The South Carolina court is not a court of coordinate jurisdiction and equal rank. There is no danger of interfering with the affairs of a sister court, which is in part the basis of the first-to-file rule. Moreover, since defendant seeks only declaratory judgment and failed to serve the original complaint, the action appears to be filed to secure defendant's choice of forum. While defendant may have also been concerned with protecting some of its legal rights, the timing of defendant's filing and defendant's subsequent actions leave the court in doubt. The court finds no basis for deferring to the pending action in South Carolina state court.

Defendant's evocation of the Colorado River doctrine is also of no avail. Colorado River

16

Water Conserv. Dist. v. United States, 424 U.S. 800, 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)

In general, federal courts should exercise the jurisdiction they are granted. Waddell & Reed

Financial, Inc. v. Torchmark Corp., 180 F. Supp.2d 1235, 1240 (D. Kan. 2001) (citation

omitted). However, in limited circumstances and in the interest of judicial economy, federal

courts have the power to refrain from hearing cases that are duplicative of a pending state court

proceeding. Colorado River, 424 U.S. at 800. The Colorado River doctrine establishes factors

for the district court to consider when deciding whether to dismiss or stay a federal suit that

parallels a state court proceeding. Health Care and Retirement Corp. of America v. Heartland

Home Care, Inc., 324 F. Supp.2d 1202, 1204 (D. Kan. 2004); Rienhardt v. Kelly, 164 F.3d 1296,

1302 (10th Cir. 1999). These include:  1) whether either court has assumed jurisdiction over

property; 2) whether the federal forum is inconvenient; 3) the avoidance of piecemeal litigation;

4) the order in which the courts obtained jurisdiction and the progress of the two cases; 5) which

forum's substantive law governs the merits of the litigation; and 6) the adequacy of the state

forum to protect the rights of the parties. Waddell, 180 F. Supp.2d at 1241 citing Colorado

River, 424 U.S. at 819, 96 S.Ct. 1236; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,

460 U.S. 1, 23, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). When evaluating these factors, the

court notes that no single factor is determinative and weight to any one factor will vary from case

to case. Wadell, 180 F. Supp.2d at 1241 (citations omitted). Doubts should be resolved in favor

of exercising jurisdiction. Id. (citations omitted).

  This court applies the general rule to this case. Defendant's declaratory judgment asks

the South Carolina court to declare that MAK has met its legal obligation to plaintiff, including

those under employment law. Defendant asserts that Ms. Mohr has returned most, but not all, of

MAK's property. Under the first factor of the <u>Colorado River</u> doctrine, any remaining MAK property that may still be the subject of the South Carolina action is likely to be in Kansas, as it is alleged to be in plaintiff's possession. The laptop computer, which is the basis of plaintiff's claim of malicious prosecution, was in Kansas until it was returned to defendant. Defendant's remaining declaratory judgment action relates to MAK's rights and obligations, which touches both jurisdictions. Second, there is no evidence that this forum would be less convenient since defendant has operations and employees in several states and MAK's principals are not all in South Carolina. Several of defendant's witnesses are likely to travel even if the case is heard in South Carolina. Alternatively, plaintiff's witnesses would have to travel if the action were heard in South Carolina. Third, proceeding with the merits of plaintiff's claims in this jurisdiction would not create piecemeal litigation. Plaintiff has asserted federal and state law claims that this court may adequately address. Although this court obtained jurisdiction second, there is no indication that defendant was moving its case faster in state court. In fact, defendant's failure to serve plaintiff for several months indicates a lethargic approach to state court litigation. It also appears that this court's law will apply to several of plaintiff's claim. Although there may be questions as to whether claims of malicious prosecution and the tort of outrage require application of South Carolina or Kansas law, this court may adequately decide this issue and is capable of applying South Carolina law, if necessary. Finally, this court is able to protect the rights of the parties and balance the competing interest. Considering these factors, particularly defendant's delay in pursuing its litigation in South Carolina, the court finds it appropriate to exercise its jurisdiction over this matter.

**V. Transfer Venue**

Title 28 U.S.C. § 1404(a) governs transfer of venue. The statute provides in pertinent part: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U .S.C. § 1404(a).

Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." Id. at 1515. "[U]nless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed." Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992) (quoting William A. Smith Contracting Co. v. Travelers Indem. Co., 467 F.2d 662, 664 (10th Cir. 1972)). The court considers the following factors in determining whether to transfer a case:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Chrysler Credit Corp., 928 F.2d at 1516.

In the alternative, defendant asks this court to transfer venue for the malicious prosecution and the tort of outrage claims. The court finds this inappropriate. At present, plaintiff's choice of forum should not be disturbed. Defendant has not satisfied its heavy burden

19

to transfer of venue.  Here, a transfer would merely shift the burden on the parties as the court highlighted in the previous section.  Although the employer is located out of state, the employee is located in this state and was hired to work in this state.  Defendant has employees in several states, including two principals who do not reside in South Carolina.  Plaintiff claims that she has several witnesses in this state.  Where a transfer of venue will only shift the burden on the parties, it is best not to disturb plaintiff's choice of forum.  The court does not anticipate problems with the other factors counseling for transfer.

## VI. OTHER PENDING MOTIONS TO DISMISS

After plaintiff joined defendants Scott Ainsworth and Steve Margolis, these defendants filed separate motions to dismiss, restating MAK's arguments in the original dismissal motion.  Although defendants Ainsworth's and Margolis's motions are not ripe, the court will likely deny these motions on the same grounds as articulated here.

Finally, MAK filed a renewed motion to dismiss that plaintiff moves to strike.  Plaintiff argues that this is merely supplemental briefing while defendant argues that it is permitted to make amendments after plaintiff amended her complaint.  Defendant MAK did not seek leave of this court to file this motion as it appears to be an edited version of MAK's prior motion.  There is no indication that anything in the memorandum was in response to plaintiff's amended complaint.  To consider this motion would be unfair to the parties as there is presently a ripe motion on the court's docket.

IT IS ACCORDINGLY ORDERED this 13th day of June 2006, that the court denies defendant MAK's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (Dkt. No. 11).

IT IS FURTHER ORDERED that the court denies defendant MAK's Motion to Dismiss, or, in the alternative, To Transfer Venue (Dkt. No. 13).

IT IS FURTHER ORDERED that the court grants plaintiff's Motion to Strike (Dkt. No. 36).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE